UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

_____
                                            )
In re:                                      )
                                            )
                                            ) Chapter 11
SENATE ACCEPTANCE CORPORATION               ) Case No: 13-30244 PM
SENATE INSURANCE AGENCY, INC.               ) *Substantively Consolidated*
                                            )
        Debtors.                            )
_____ )
                                            )
JANET M. NESSE, CHAPTER 11 TRUSTEE FOR      )
SENATE ACCEPTANCE CORPORATION AND           )
RESPONSIBLE OFFICER FOR DEBTOR RELATED      )
COMPANIES                                   )
McNamee Hosea Jernigan Kim Greenan & Lynch, P.A. )
6411 Ivy Lane, Suite 200                    )
Greenbelt, MD 20770                         )
                                            ) Adversary Proceeding: ____
        Plaintiff,                          )
                                            )
  v.                                        )
                                            )
 DONALD C. GRAU, CPA                        )
 200 Commerce Drive, Suite 210              )
 Coraopolis, PA 15108-3189                  )
                                            )
 And                                        )
                                            )
 GRAU & CO., LLC                            )
 200 Commerce Drive, Suite 210              )
 Coraopolis, PA 15108-3189                  )
                                            )
        Defendants.                         )
_____ )

## **COMPLAINT**

The Plaintiff, Janet M. Nesse, the Chapter 11 trustee for the bankruptcy estate of Senate

Acceptance Corporation ("SAC") and responsible officer for the Debtor Related Companies,

Senate Insurance Agency, Inc. ("SIA"), Laurel Insurance Corporation, Congress Acceptance

1

Corporation, Presidential Acceptance Corporation ("PAL"), Congress Motor Club, Inc. and Middleview Holding, LLC by and through her attorneys, McNamee Hosea Jernigan Kim Greenan & Lynch, P.A., files this Complaint as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1334(b).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1409.

3. This matter is related to the Chapter 11 Bankruptcy Cases of SAC and SIA pending in this district.

## PARTIES

4. The Plaintiff, Janet M. Nesse, is the duly appointed, qualified and serving Chapter 11 trustee ("Trustee"), of the bankruptcy estate of SAC in a case pending in the United States Bankruptcy Court for the District of Maryland, Case No. 13-30244.

5. SIA, Laurel Insurance Corporation, Congress Acceptance Corporation, Presidential, Congress Motor Club, Inc. and Middleview Holding, LLC are known as the "Debtor Related Companies." Janet Nesse is the Responsible Officer for the Debtor Related Entities pursuant to the Consent Order Resolving Emergency Motion for Appointment of an Interim Trustee Pursuant to 11 U.S.C. § 303(g) entered in the bankruptcy case of Geary B. Katz, case no. 14-10356. Each company was owned, in part, by Geary Katz and some Debtor Related Companies were owned, in part, by Jonathan K. Friedlander.

6. On February 5, 2014, Janet Nesse, as responsible Officer of SIA filed a Chapter 11 petition for SIA in the United States Bankruptcy Court for the District of

2

Maryland, Case No. 14-11743.  The SIA and SAC bankruptcy cases have been substantively consolidated.

7. The Defendants, served as accountants for SAC, SIA and one or more of the Debtor Related Companies.

8. Defendants performed various functions including preparing tax returns, working with the Debtors on financial statements and other accounting activities.

### STATEMENT OF FACTS COMMON TO ALL COUNTS

9. SAC, SIA and the Debtor Related Companies were all related entities in marketing and providing low-cost car insurance and insurance financing to consumers in Maryland.

10. The Defendants worked with Geary Katz and his bookkeeper, Mary White in preparing tax returns, reconciling books and records, compiling financial information, preparing financial statements and other accounting activities.

11. Defendants engaged in numerous inappropriate financial activities, including transferring funds among banks and among entity accounts and using incomplete or inaccurate expense and income information.

12. Within the three (3) years preceding the filing of the bankruptcy petitions for SAC and SIA (collectively, the "Debtors"), the Debtors, PAL, Capital Acceptance Corporation ("CAC") and one or more other Debtor Related Companies (collectively the "Transferors") transferred funds to Defendants ("MUFCA Fraudulent Transfers").

13. Within the two (2) year period preceding the filing of the Debtors' bankruptcy petitions, the Transferors transferred funds to Defendants ("Fraudulent Transfers").

14. Within one year preceding the filing of the Debtors' bankruptcy petitions, the Transferors transferred funds to Defendants ("Preferential Transfers").

15. Defendants received funds as fee payments and for various other designated and undesignated purposes.

16. Upon information and belief, the Transferors received less than a reasonably equivalent value in exchange for the MUFCA Fraudulent Transfers, Fraudulent Transfers and Preferential Transfers.

## **COUNT I – NEGLIGENCE/MALPRACTICE AS ACCOUNTANT**

17. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-16.

18. Being the CPA and accountant of the Debtors and one or more of the Debtor Related Companies, Defendants had a duty to exercise care and skill to comply with accepted and reasonable standards of care ("Standards of Care") for performing such services.

19. Defendants were fully aware of the nature of the Debtor's and Debtor Related Companies' businesses and its sources of funding from private individuals.

20. Defendants, to comply with the Standards of Care, had a duty to provide reasonable care in delivering accounting services. Defendants had a duty to instruct their clients to act in accordance with applicable law and ensure that accurate information was being provided to taxing authorities, regulators, investors and creditors.

21. Defendants failed to exercise a reasonable degree of care and skill in the performance of their duties.

22. Defendants failed to exercise the skill and knowledge ordinarily possessed by accountants under similar circumstances.

4

23.     Defendants failed to timely mitigate damages caused by their actions.

24.     Defendants failed to note clear indications that the information provided to them and, in turn, to others, was inaccurate.

25.     Defendants failed to note that returns were sent to them for processing because other accountants were scrutinizing Debtors' and the Debtor Related Companies returns too carefully.

26.     Defendants failed to follow up and determine whether returns were actually filed and in cases where returns were filed, Defendants permitted inadequate and incorrect information to be included in the returns and other financial information.

27.     Defendants failed to note discrepancies in the returns for different entities.

28.     Defendants failed to note whether taxes, including payroll taxes were being paid.

29.     Defendants are liable for the lack of such skill, care, and diligence as those of the accounting profession commonly possess and exercise in such matters of professional employment.

30.     As a direct and proximate result of one or more of the acts or omissions stated above, the Plaintiff, the estates of SAC and SIA and the Debtor Related Companies have been injured and have sustained damages in an amount to be determined at trial.

## **COUNT II – BREACH OF FIDUCIARY DUTY**

31.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-30.

32.     Defendants owed fiduciary duties to the Debtors, Debtor Related Companies and their respective investors and creditors and failed to take action on statements that they knew or should have known was false or inaccurate.

33. The Defendants failed to instruct the Debtors to act in accordance with applicable law and accounting principles.

34. The Defendants cooperated and facilitated a money moving scheme that allowed the Debtors to remain in business and take in more investors that had no chance of being repaid because the Debtors were insolvent.

35. As a direct and proximate result of one or more of the acts or omissions stated above, the Plaintiff and the Debtors estate have sustained damages in an amount to be determined at trial.

36. Defendants actions benefitted them by allowing them to receive funds at a time that they knew or should have known that the Debtors were insolvent but failed to take any actions to protect the customers, investors, and creditors of the Debtors and the Debtor Related Companies.

WHEREFORE, Plaintiff prays for judgment and relief on Count II as follows:

A. Judgment entered against Defendants for an amount to be determined at trial but anticipated to be in excess of $1,000,000.00;

B. Costs of this suit, including reasonable expert fees;

C. Pre- and post-judgment interest; and

D. Such other and further relief as this Court may deem necessary or appropriate.

### COUNT III – PREFERENTIAL TRANSFERS – 11 U.S.C. § 547

37. The Trustee realleges and incorporates Paragraphs 1 through 36 as if set forth in full herein.

38. The Defendants received funds during the one year period prior to the filing of the SAC petition.

39. The Preferential Transfers constitute transfers of the Debtors' interest in property.

40. The Preferential Transfers were to or for the benefit of the Defendants, who are insiders.

41. The Preferential Transfers may have been made for or on account of an antecedent debt owed from the Debtors to the Defendants before such transfers were made.

42. The Preferential Transfers were made when the Debtors were insolvent.

43. The Preferential Transfers were made from December 3, 2012 through December 2, 2013, which is within one year before the date of the filing of the SAC petition.

44. The Preferential Transfers enabled the Defendants to receive more than they would have received if (a) the case were a case under Chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) the Defendants received only such distribution from the Chapter 7 estate as to which they would be entitled under the Bankruptcy Code.

45. The Preferential Transfers constitute voidable preferences pursuant to 11 U.S.C. § 547 and the Defendants are liable to the Debtors' Chapter 11 estate for the return of the Preferential Transfers pursuant to 11 U.S.C. §§ 547 and 550.

WHEREFORE Plaintiff, Janet M. Nesse, Chapter 11 Trustee and Responsible Officer, respectfully requests that this Court enter Judgment in favor of the Trustee and against Defendants as to Count – III:

A. avoiding the Preferential Transfers;

B. ordering the Defendants to pay to the Plaintiff any and all money received pursuant to the Preferential Transfers which includes all funds received from the Debtors or any of the Debtor Related Companies in the year prior to the filing;

C. awarding Plaintiff prejudgment interest, costs and legal fees; and

D.	granting such other relief as this court deems just and equitable.

### COUNT IV – FRAUDULENT TRANSFERS – 11 U.S.C. § 548(a)(1)(A)

46.	The Trustee realleges and incorporates Paragraphs 1 through 45 as if set forth in full herein.

47.	The Fraudulent Transfers constitute transfers of the Debtors' interest in property.

48.	The Fraudulent Transfers were made by SAC from December 3, 2011 through December 2, 2013, which is within two years before the date of the filing of the SAC petition.

49.	The Fraudulent Transfers were made by CAC from December 3, 2011 through December 2, 2013 which is within two years before the date of the filing of the SAC petition.

50.	The Fraudulent Transfers were made by SIA from December 3, 2011 through December 2, 2013 which is within two years before the date of the filing of the SAC petition.

51.	The Fraudulent Transfers were made by PAL from December 3, 2011 through December 2, 2013 which is within two years before the date of the filing of the SAC petition.

52.	Upon information and belief, the Fraudulent Transfers were made by the Debtors, and the Debtor Related Companies with the actual intent to hinder, delay, or defraud creditors.

53.	Upon information and belief, the Fraudulent Transfers were made by the Debtors, because of the status of Defendants as insider and for their willingness to work with the Debtors to make the financial health of the company more attractive than it really was.

54.	The Fraudulent Transfers constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) and the Defendants are liable to the Debtors' Chapter 11 estate and to the Debtor Related Companies for the return of the Fraudulent Transfers pursuant to 11 U.S.C. §§ 548 and 550.

WHEREFORE Plaintiff, Janet M. Nesse, Chapter 11 Trustee and Responsible Officer of

the Debtor Related Companies respectfully requests that this Court enter Judgment in favor of the Plaintiff and against Defendants as follows as to Count – IV:

     A.     avoiding the Fraudulent Transfers which are composed of all funds received by the Defendants from the Debtors and the Debtor Related Companies in the two year period prior to the filing;

     B.     ordering the Defendants to pay to the Trustee any and all money received pursuant to the Fraudulent Transfers;

     C.     awarding Plaintiff prejudgment interest, costs and legal fees; and

     D.     granting such other relief as this court deems just and equitable.

### COUNT V – FRAUDULENT TRANSFERS – 11 U.S.C. § 548 (a)(1)(B)

55.     The Trustee realleges and incorporates paragraphs 1 through 54 as if set forth in full herein.

56.     The Fraudulent Transfers constitute transfers of the Debtors' interest in property.

57.     The Fraudulent Transfers were made by SAC from December 3, 2011 through December 2, 2013, which is within two years before the date of the filing of the SAC petition.

58.     The Fraudulent Transfers were made by CAC from December 3, 2011 through December 2, 2013, which is within two years before the date of the filing of the SAC petition.

59.     The Fraudulent Transfers were made by SIA from December 3, 2011 through December 2, 2013, which is within two years before the date of the filing of the SAC petition.

60.     The Fraudulent Transfers were made by PAL from December 3, 2011 through December 2, 2013, which is within two years before the date of the filing of the SAC petition.

61.     Upon information and belief, the Debtors received less than a reasonably equivalent value in exchange for such Fraudulent Transfers.

62.     Upon information and belief, the Fraudulent Transfers were made when the Debtors were insolvent.

63.     The Fraudulent Transfers constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and the Defendants are liable to the Debtors' Chapter 11 estate for the return of the Fraudulent Transfers pursuant to 11 U.S.C. §§ 548 and 550.

WHEREFORE Plaintiff, Janet M. Nesse, Chapter 11 Trustee and Responsible Officer of the Debtor Related Companies, respectfully requests that this Court enter Judgment in favor of the Plaintiff and against Defendants as follows as to Count – V:

A.      avoiding the Fraudulent Transfers which are composed of all funds received by the Defendants from the Debtors and the Debtor Related Companies during the two years prior to the filing;

B.      ordering Defendants to pay to the Trustee any and all money received pursuant to the Fraudulent Transfers;

C.      awarding Trustee prejudgment interest, costs and legal fees; and

D.      granting such other relief as this court deems just and equitable.

### COUNT VI – FRAUDULENT TRANSFERS
### MD UNIFORM FRAUDULENT CONVEYANCE ACT,
### MD CODE ANN., COM. LAW §§ 15-201 et seq.

64.     The Trustee realleges and incorporates paragraphs 1 through 63 as if set forth in full herein.

65.     The MUFCA Fraudulent Transfers constitute transfers of the Debtors' interest in property.

66.     The MUFCA Fraudulent Transfers were made by SAC within three (3) years before the date of the filing of the SAC petition, which was December 2, 2013.

67. The MUFCA Fraudulent Transfers were made by SIA within three (3) years before the date of the filing of the SAC petition, which was December 2, 2013.

68. The MUFCA Fraudulent Transfers were made by one or more of the Debtor Related Companies within three (3) years before the date of the filing of the SAC petition, which was December 2, 2013.

69. To the extent that Defendants received any payments from any of the other Debtor Related Companies within the three (3) years before the date of the filing of the SAC petition, such payments are also avoidable as fraudulent transfers.

70. Upon information and belief, the Debtors and Debtor Related Companies were or would be rendered insolvent by the MUFCA Fraudulent Transfers.

71. Upon information and belief, the MUFCA Fraudulent Transfers were made without fair consideration.

72. Upon information and belief, the Debtors and Debtor Related Companies were engaged or were about to engage in a business or transaction for which the remaining property after the MUFCA Fraudulent Transfers was an unreasonably small capital.

73. Upon information and belief, the Debtors and Debtor Related Companies intended or believed that they would incur debts beyond their ability to pay as they matured.

74. Upon information and belief, the MUFCA Fraudulent Transfers were made with actual intent to hinder, delay, or defraud present or future creditors.

75. Upon information and belief, the Fraudulent Transfers were made by the Debtors and Debtor Related Companies to the Defendants because of Defendants' insider status and the special relationship between them, Geary Katz and the Debtors.

76. The MUFCA Fraudulent Transfers constitute avoidable fraudulent transfers

pursuant to Md. Code Ann., Com. Law §§ 15-204, 15-205, 15-206, and 15-207 of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), and the Defendants are liable to the Debtors' Chapter 11 estate for the return of the MUFCA Fraudulent Transfers pursuant to Md. Code Ann., Com. Law § 15-209.

WHEREFORE Plaintiff, Janet M. Nesse, Chapter 11 Trustee and Responsible Officer of the Debtor Related Companies, respectfully requests that this Court enter Judgment in favor of the Trustee and against Defendants as follows as to Count – VI:

A.	avoiding the MUFCA Fraudulent Transfers which constitute all payments made by the Debtors or any of the Debtor Related Companies during the three year period prior to the filing;

B.	ordering the Defendants to pay to the Trustee any and all money received pursuant to the MUFCA Fraudulent Transfers, which cover any and all conveyances made by the Debtors and Debtor Related Companies within the three year period prior to the filing of the SAC petition;

C.	awarding Trustee prejudgment interest, costs and legal fees; and

D.	granting such other relief as this court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2015                    Respectfully submitted,

/s/ Janet M. Nesse
Janet M. Nesse, No. 07804
McNamee Hosea
6411 Ivy Lane
Greenbelt MD  20770
Tel. (301) 441-2420
jnesse@mhlawyers.com

1

*Attorneys for the Chapter 11 Trustee of Senate Acceptance Corporation and Responsible Officer for Senate Insurance Agency, Inc., Laurel Insurance Corporation, Congress Acceptance Corporation, Presidential Acceptance Corporation, Congress Motor Club, Inc. and Middleview Holdings*

1